ITEM NO. 3

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:

JAMES JOSEPH MELUZIO ) BANKRUPTCY NO. 10-02083
) Chapter 7
Debtor. )

---

JAMES JOSEPH MELUZIO )
)
Plaintiff/Debtor, )
)
v. ) ADVERSARIAL PROCEEDING
) 1:10-ap-00165
CAPITAL ONE BANK (USA), N.A. )
)
Defendant. )

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT CAPITAL ONE BANK (USA), N.A.'S MOTION TO DISMISS

### I.   INTRODUCTION

The Complaint filed by plaintiff James Joseph Meluzio ("Plaintiff") should be dismissed in its entirety because Plaintiff's claims for violations of section 2-128(e) of the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-1-101 *et seq.* ("WVCCPA"), are preempted by the National Bank Act, 12 U.S.C. § 24 ("NBA"). As noted by the recent rulings of the United States District Court for the Northern District of West Virginia[1] ("Northern District"), the debt collection provisions set forth in section 2-128(e) of the WVCCPA ("WVCCPA 2-128(e)") are preempted by the NBA when applied to COBUSANA, a national association. Specifically, the Northern District has held that WVCCPA 2-128(e) is presumed to be preempted

---

[1] Lomax v. Bank of America, N.A., No. 3:10-cv-48, 435 B.R. 362, 2010 WL 3271970 (N.D. W. Va. Aug 18, 2010); Frye v. Bank of America, N.A., et al., No. 3:10-cv-47, 2010 WL 3244879 (N.D. W. Va. Aug. 16, 2010); and Padgett v. OneWest Bank, FSB, No. 3:10-cv-08, 2010 WL 1539839 (N.D. W. Va. Apr. 19, 2010).

because the debt collection provisions therein impermissibly *affect the lending* of national banks like COBUSANA. Accordingly, Plaintiff's claims are preempted and dismissal is appropriate.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 23, 2010, Plaintiff commenced an adversary proceeding against COBUSANA by filing a Complaint in the United States Bankruptcy Court for the Northern District of West Virginia. In the Complaint, Plaintiff alleges that he had three unsecured debt accounts with COBUSANA, account numbers ending in 7890, 8009, and 0446 ("the Accounts"). (Compl. at ¶ 9.) The Complaint arises out of Plaintiff's failure to make timely payments on the Accounts, and COBUSANA's corresponding attempts at collecting the debts owed to it by Plaintiff. Plaintiff claims that he notified a "COBUSANA representative named Joe or Joel that he was filing bankruptcy and gave the representative the name, address, and telephone number of his retained counsel" on September 17, 2010. (Compl. at ¶ 12.) Plaintiff alleges that thereafter, COBUSANA attempted "to collect the debt by contacting Plaintiff at least ten ('10') times . . .", and that such attempts violate WVCCPA 2-128(e). (Compl. at ¶ 21.) Plaintiff seeks damages in the amount of $43,500.00 and attorney fees and costs. (Compl. at *ad damnum clause*.)

## III. ARGUMENT

### A. Motion to Dismiss Standard

A motion under Federal Rule of Civil Procedure 12(b) "focus[es] only on the legal sufficiency of the complaint." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). The Court must accept all factual allegations in the complaint as true and view those facts in the light most favorable to the non-moving party. See Giarratano, 521 F.3d at 302; Monroe v. City of Charlottesville, Va., 579 F.3d 380, 386 (4th Cir. 2009). The Court "need not accept as true unwarranted inferences, unreasonable conclusions, or argument." Id. A complaint must be

dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**B.    National Bank Act Preemption Standard**

Under the United States Constitution, federal law is the "supreme law of the land." U.S. CONST. art. VI, cl. 2. A state law that is preempted by federal law is "without effect." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). Agencies vested with authority conferred upon them by Congress have the power to issue regulations preempting state law; in effect, "[f]ederal regulations have no less preemptive effect than federal statutes." Fid. Fed. Sav. & Loan Ass'n v. de law Cuesta, 458 U.S. 141, 153 (1982). The NBA confers power upon the Office of Comptroller of the Currency ("OCC") to regulate and supervise the lending activities of national banks. See 12. U.S.C. § 1 *et seq.*; Watters v. Wachovia Bank, N.A., 550 U.S. 1, 6 (2007). Vested with authority by Congress, the OCC established a preemption regulation in 12 C.F.R. § 7.4008 ("Section 7.4008"), which addresses the "non-real estate" lending activities of national banks, which would include credit card lending. See 69 Fed. Reg. 1904, 1095 (Jan. 13, 2004); see also Capital One Bank (USA), N.A. v. McGraw, 563 F.Supp. 2d 613 (S.D.W. Va. 2008). Section 7.4008(d)(1) provides "[e]xcept where made applicable by Federal law, state laws that obstruct, impair or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks." 12. C.F.R. § 7.4008(d)(1).

Section 7.4008 contains a list of categories that *are* preempted by federal law and a list of those that are not preempted. See 12 C.F.R. §§ 7.4008(d)(2) and (e). The regulation provides that a:

> national bank may make non-real estate loans *without regard to state law* limitations concerning:

(i) Licensing, registration (except for purposes of service of process), filings, or reports by creditors;
(ii) The ability of a creditor to require or obtain insurance for collateral or other credit enhancements or risk mitigants, in furtherance of safe and sound banking practices;
(iii) Loan-to-value ratios;
(iv) The terms of credit, including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
(v) Escrow accounts, impound accounts, and similar accounts;
(vi) Security property, including leaseholds;
(vii) Access to, and use of, credit reports;
(viii) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;
(ix) Disbursements and repayments; and
(x) Rates of interest on loans

12 C.F.R. 7.4008(d)(2) (emphasis added).[2]

Subsection (e), entitled "State laws that are not preempted," categorically exempts from preemption those areas of state law that are "not inconsistent with the non-real estate lending powers of national banks [ . . . ]." 12 C.F.R. 7.4008(e). This subsection purposely provides that the following areas of state law:

apply to national banks *to the extent that they only incidentally affect* the exercise of national banks' non-real estate lending powers [ . . . ]:

(1) Contracts;
(2) Torts;
(3) Criminal law;
(4) Rights to collect debts;
(5) Acquisition and transfer of property;
(6) Taxation;
(7) Zoning; and

---

[2] A parallel OCC regulation, governing a national bank's lending regarding real estate loans, includes in its explicit list of preempted state laws, those that impose limitation upon the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 34.4(a)(10). This particular provision is not found in the parallel regulation at 12 C.F.R. § 7.4008, governing national banks' non-real estate lending.

> (8) Any other law the effect of which the OCC determines to be incidental to the non-real estate lending operations of national banks or otherwise consistent with the powers set out in paragraph (a) of this section.

12 C.F.R. 7.4008(e) (emphasis added). According to the OCC, subsection (e) is designed to exempt from preemption those laws that "typically do not regulate the manner or content of the business of banking authorized for national banks, but rather establish the legal infrastructure that makes practicable the conduct of that business." 69 Fed. Reg at 1913; see also In re Ocwen Loan Servicing, 491 F.3d 638, 643 (7th Cir. 2007).

Courts addressing the issue of NBA preemption have employed a two-part analysis in determining whether state law is preempted under a particular regulation. See Office of Thrift Supervision ("OTS"), *Lending and Investment*, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996). Under the two-step approach, originally outlined by the OTS, the court first considers whether the state law in question is categorically preempted under the governing regulation; if so, the analysis ends – the law is preempted. Id. If not, the court then asks whether the law *affects lending*. Id. If so, the law is presumed to be preempted. Id. The presumption may only be overcome by a clear showing that the law's affect on lending is *no more than incidental*. Id.

C. **Plaintiff's WVCCPA Claims are Preempted by the National Bank Act**

    (i) **WVCCPA 2-128(e) more than incidentally affects lending and is preempted.**

        a. **A presumption of preemption exists in favor of COBUSANA because WVCCPA 2-128(e) affects lending.**

The Northern District recently ruled that WVCCPA 2-128(e) is preempted by the NBA under the OCC regulation governing real estate lending. See Lomax v. Bank of America, N.A., No. 3:10-cv-48, 435 B.R. 362, 2010 WL 3271970 (N.D.W. Va. Aug 18, 2010); Frye v. Bank of America, N.A., *et al.*, No. 3:10-cv-47, 2010 WL 3244879 (N.D.W. Va. Aug. 16, 2010). In a similar case, the Northern District found that WVCCPA 2-128(e) is preempted by the Home

Owners' Loan Act ("HOLA"). See Padgett v. OneWest Bank, FSB, No. 3:10-cv-08, 2010 WL 1539839 (N.D.W. Va. Apr. 19, 2010). In all three cases, the defendant moved to dismiss certain WVCCPA claims relating to unlawful debt collection on the grounds that such claims were preempted. In making its preemption determination, the Northern District employed the two-part analysis outlined by the OTS – first, determining whether the claims were categorically preempted, and second, addressing the claims' affect on lending and whether that affect was more than incidental. 61 Fed. Reg. at 50966-67.

At the outset, the WVCCPA's debt collection provisions do not appear to be categorically preempted under 12 C.F.R. § 7.4008.[3] No category in Section 7.4008's list of preempted areas of state law directly applies to a national bank's debt collection practices, inasmuch as those practices relate to non-real estate lending. However, absent categorical preemption, the analysis does not end. The Court must determine whether the state law has any more than an "incidental" effect on lending. W. Va. Code § 46A-2-128 provides, in pertinent part, that:

> [n]o debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim . . . the following conduct is deemed to violate this section:
> [ . . . ]
> (e) *Any communication* with a consumer *whenever it appears* that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication.

W. Va. Code § 46A-2-128 (emphasis added). Logic dictates that WVCCPA 2-128(e) affects the "lending" of COBUSANA because it regulates and restricts COBUSANA's ability to collect on debt that it has lent.

---

[3] The "servicing" provision of the real estate lending regulation, 12 C.F.R. § 34.4(a)(10), relied upon by the Court in Lomax and Frye is not duplicated in Section 7.4008. (Compare 12 C.F.R. § 34.4(a) with 12 C.F.R. § 7.4008(d)(2).)

> The NBA clearly contemplates broad participation by the national banks in lending activities. The federal banking powers extend to not only creating loans, but also purchasing, participating in, and dealing loans. 12 C.F.R. § 7.4008(a). The power to *collect debts* and repossess collateral property under *default is inseparable from the power to make or purchase loans*, and is arguably an element of participation and dealing in loans. Furthermore, one of the fundamental purposes of the NBA is to provide uniformity of regulation to the national banking system. See 69 Fed. Reg. at 1908. There is no reason to believe that Congress intended this uniformity to apply only to the first-step of the lending process. Therefore, this Court construes the preemption test of section 7.4008(d) to apply to all activities undertaken under national lending powers.

Aguayo v. United States Bank, 658 F. Supp. 2d 1226, 1234 (S.D. Cal. 2009) (emphasis added). Indeed, the Northern District has already found that the language in WVCCPA 2-128(e), which clearly regulates debt collection, not only affects the "lending" of a national bank, but that its affect on lending is more than incidental. See Lomax, 435 B.R. at 371, 2010 WL 3271970 at *7; Frye, 2010 WL 3244879 at *7. Consequently, WVCCPA 2-128(e) *affects lending*, and it is presumptively preempted.

> **b. Plaintiff cannot overcome the presumption of preemption in favor of COBUSANA because section 128(e) of the WVCCPA's affect on lending is far more than an "incidental" one.**

Plaintiff may only overcome the presumption of preemption by showing that the state law no more than "incidentally" affects lending. Plaintiff cannot make this showing. WVCCPA 2-128(e) regulates the manner in which COBUSANA may engage in debt collection. The provision restricts not only *to whom* COBUSANA may communicate regarding indebtedness, but also dictates *when and how* those communications may occur. This type of restriction significantly impedes upon the lending operations of COBUSANA.

In Lomax and Frye, the Northern District held that the NBA would preempt WVCCPA 2-128(e) because the debt collection provisions of the WVCCPA "more than incidentally affect"

lending.[4] Lomax, 435 B.R. at 371, 2010 WL 3271970 at *7; Frye, 2010 WL 3244879 at *7. The Northern District compared the restrictions imposed by WVCCPA § 128(e) with those imposed by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), and stated that when and where the WVCCPA imposes a greater restriction, or a "heavier burden," than that imposed by the FDCPA, the state statute "more than incidentally affects" lending and is preempted. Id. The Northern District stated, "[t]he FDCPA prohibits a debt collector from communicating with a debtor it 'knows' is represented by an attorney, whereas the WVCCPA prohibits communication whenever it 'appears' that a consumer has attorney representation." Id. Thus, a debt collector would violate the WVCCPA, when he would not violate the FDCPA, by contacting a customer that it "*should have known*, from appearances [ . . . ] was represented by an attorney." Id. Because the "undertaking required by the language 'appears' would more than incidentally affect lending," the Northern District stated, WVCCPA 2-128(e) was preempted under the regulation. Id.

COBUSANA, just as those entities in Lomax and Frye, is a national association whose lending powers under the National Bank Act are being unlawfully impeded by state law. Thus, WVCCPA 2-128(e) is preempted under the NBA as it impermissibly impedes upon the lending operations of COBUSANA, a national bank. Plaintiff's claims against COBUSANA should be dismissed.

---

[4] Because the Lomax and Frye cases involved consumer debt on real estate, the court found that the WVCCPA's restriction in section 128(e) would be preempted under the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" provision set forth in 12 C.F.R. § 34.4 alone. Lomax, 435 B.R. at 371, 2010 WL 3271970 at *7; Frye, 2010 WL 3244879 at *7. The court went on to state that, in the alternative, the WVCCPA's debt collection restrictions would *also* be preempted because they "more than incidentally affect lending." Id.

## IV. CONCLUSION

Because WVCCPA 2-128(e) *affects the lending* of COBUSANA, a national bank, it is presumptively preempted by the NBA. Plaintiff cannot overcome this presumption. In the wake of the Northern District's recent rulings in Lomax, Frye, and Padgett, WVCCPA 2-128(e)'s affect on lending is *more than incidental*, and is therefore preempted. The Complaint should be dismissed in its entirety because Plaintiff's claims for violations of WVCCPA 2-128(e) are preempted by the National Bank Act.

**CAPITAL ONE BANK (USA), N.A.**

**By: Spilman Thomas & Battle, PLLC**

/s/ Bruce M. Jacobs
James S. Crockett, Jr. (WV State Bar #9229)
Bruce M. Jacobs (WV State Bar #6333)
Spilman Center
300 Kanawha Blvd., East
Charleston, WV 25301
304-340-3800
304-340-3801 (facsimile)
jcrockett@spilmanlaw.com
bjacobs@spilmanlaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| **JAMES JOSEPH MELUZIO** | ) | **BANKRUPTCY NO. 10-02083** |
| | ) | **Chapter 7** |
| Debtor. | ) | |

| | | |
|---|---|---|
| **JAMES JOSEPH MELUZIO** | ) | |
| | ) | |
| Plaintiff/Debtor, | ) | |
| | ) | |
| v. | ) | **ADVERSARIAL PROCEEDING** |
| | ) | **1:10-ap-00165** |
| **CAPITAL ONE BANK (USA), N.A.** | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I, Bruce M. Jacobs, counsel for Capital One Bank (USA), N.A., do hereby certify that on February 2, 2011, I served the foregoing **Memorandum of Law in Support of Defendant Capital One Bank (USA), N.A.'s Motion to Dismiss** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Todd B. Johnson
> Johnson Law, PLLC
> Post Office Box 519
> Morgantown, WV 26507-0519

> /s/ Bruce M. Jacobs
> Bruce M. Jacobs (WV State Bar #6333)
> bjacobs@spilmanlaw.com